# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

June 24, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**BRAYMAN CONSTRUCTION,**
**Employer Below, Petitioner**

**vs.)     No. 15-0486** (BOR Appeal No. 2050021)
(Claim No. 2010121608)

**JIMMIE L. CREW JR.,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Brayman Construction, by Lisa Warner Hunter, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Jimmie L. Crew Jr., by Reginald D. Henry, his attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated April 27, 2015, in which the Board affirmed a November 18, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges reversed the claims administrator's July 26, 2013, decision granting Mr. Crew a 5% permanent partial disability award, and instead granted Mr. Crew a 23% award. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Crew, a heavy equipment operator, was injured in the course of his employment on January 25, 2010, when he was struck in the head by a high pressure water hose. Mr. Crew spent seven days in the hospital and was diagnosed with minimally depressed skull fracture, scalp laceration, traumatic subarachnoid hemorrhage, chest pain, and abnormal electrocardiogram. The claim was held compensable for unspecified head injury and subarachnoid hemorrhage.

1

Mr. Crew underwent several independent medical evaluations in order to determine how much permanent impairment he sustained as a result of the compensable injury. On January 25, 2011, Howard Senter, M.D., noted that Mr. Crew was back to working full time. He reported that his symptoms mainly consisted of anxiety and flashbacks when he had to return to the place he was injured. Dr. Senter concluded that he had no impairment to his body but recommended a psychological evaluation. Edward Jones, M.A., performed a psychological evaluation on February 23, 2011. He noted that Mr. Crew had moderate anxiety and mild depression. Mr. Jones measured Mr. Crew's IQ at ninety-one. On March 7, 2011, Ahmed Faheem, M.D., performed a psychological independent medical evaluation in which he diagnosed Mr. Crew with post-traumatic stress disorder related to the compensable injury. He assessed Mr. Crew's IQ at ninety-one. He opined that Mr. Crew would benefit from counseling and medication but clarified that his post-traumatic stress disorder was not severe enough to interfere with his work. Dr. Senter reevaluated Mr. Crew on March 20, 2012. At that time, Mr. Crew stated that when he returned to construction, he developed a headache, dizziness, and anxiety within a few hours of being there and was terminated from his position.

The Office of Judges affirmed a claims administrator decision closing the claim for temporary total disability benefits in a July 5, 2012, Order. The Office of Judges determined that while Mr. Crew suffered from and required treatment for post-traumatic stress disorder, Dr. Senter found that it did not rise to the level of temporary total disability and did not prevent him from working.

Khalid Hasan, M.D., performed an independent medical evaluation on July 8, 2013, in which he diagnosed moderate, recurrent, major depressive disorder; chronic post-traumatic stress disorder; and post-concussion disorder. Testing indicated moderate anxiety and severe depression. It was noted that Mr. Crew suffered from dreams and intrusive thoughts about his accident, which lends support to a diagnosis of post-traumatic stress disorder. Dr. Hasan recommended behavioral techniques to manage depression and anxiety. Shortly thereafter, Dr. Hasan performed a second evaluation in which opined that Mr. Crew had reached maximum medical improvement and assessed 5% whole person psychological impairment using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993). The claims administrator granted Mr. Crew a 5% permanent partial disability award on July 26, 2013.

Safiullah Syed, M.D., began treating Mr. Crew for post-traumatic stress disorder in January of 2013. In an August 26, 2013, letter, Dr. Syed stated that Mr. Crew continued to suffer from symptoms of post-traumatic stress disorder which included anxiety, depression, irritability, hypervigilance, flashbacks, nightmares, memory problems, and occasional blackout spells. Dr. Syed opined that the ongoing psychiatric treatment was necessary as a result of the compensable injury.

In a psychological evaluation on February 18, 2014, Ralph Smith, M.D., stated that testing showed a marked amount of emotional distress and moderate anxiety. Mr. Crew reported dizziness, headaches, loss of balance, bilateral hearing loss, and heat intolerance. He also reported that he gets very nervous around drilling equipment and other equipment associated

with his former work. He stated that he suffered from nightmares of the accident and had difficulty controlling his anger and concentrating. Dr. Smith diagnosed major neurocognitive disorder due to traumatic brain injury and post-traumatic stress disorder. He found that Mr. Crew had notable neurocognitive deficits as a result of his injury. The deficits were notable on both mental status examination and specialized neuropsychological tests. Dr. Smith opined that Mr. Crew's IQ was seventy-seven, which placed him in the borderline range of intellectual functioning. Dr. Smith therefore concluded that Mr. Crew meets all the criteria for major neurocognitive disorder and traumatic brain injury. He rated the severity as moderate. Using the American Medical Association's *Guides*, he assessed 14% impairment for cognitive dysfunction. For post-traumatic stress disorder, he used West Virginia Code of State Rules § 85-20 (2006) and placed Mr. Crew in psychiatric class III for mild impairment. Dr. Smith opined that his numerous activity restrictions show that his post-traumatic stress disorder has an impact on his social and work functioning. He assigned 10% impairment for the condition for a combined recommendation of 23% psychiatric impairment.

In an August 15, 2014, independent medical and neuropsychiatric forensic evaluation, Bobby Miller, M.D., diagnosed Mr. Crew with dysthymic disorder due to the compensable injury and non-compensable somatoform disorder. Dr. Miller noted that Mr. Crew had chronic mood symptoms; however, he opined that he no longer met the criteria for post-traumatic stress disorder and had no evidence of a brain injury. Dr. Miller measured his IQ at ninety-six. He then compared his IQ testing to others of record and determined that other evaluators, including himself, found that Mr. Crew has average intelligence. Comparatively, Dr. Smith found mild mental retardation. Dr. Miller further noted that he found evidence of malingering in his tests. He opined that possible explanations include recovery or remission from his conditions, past malingering that was not caught, or both. Dr. Miller opined that Mr. Crew's impairment for dysthymic disorder fell in the mild range. He assessed 5% impairment and then apportioned 1% for non-work-related factors such as life stressors, poor coping skills, and symptom exaggeration. His total impairment recommendation was therefore 4%. He stated that he agreed with Dr. Hasan's reasoning and level of disability for his finding of 5% impairment due to major depression. Dr. Miller opined that Mr. Crew's depression had evolved into dysthymic disorder. Dr. Miller also stated that he disagreed with Dr. Smith's recommendation of 23% psychological impairment because Dr. Smith's findings were remarkably more severe than his.

On November 18, 2014, the Office of Judges reversed the claims administrator's grant of a 5% permanent partial disability award and instead granted Mr. Crew a 23% award. It found that while Drs. Hasan and Miller both found that he suffers from 5% psychiatric impairment, their assessments of Mr. Crew differ. Dr. Hasan diagnosed moderate major depressive disorder and a history of post-traumatic stress disorder. Dr. Miller, in contrast, diagnosed a somatoform disorder and dysthymic disorder. Dr. Miller also found evidence of symptom magnification. The Office of Judges stated that while Dr. Hasan and Dr. Miller came to the same impairment recommendation, their diagnoses are vastly different. The Office of Judges also stated that Dr. Smith and Dr. Miller both gave detailed accounts of Mr. Crew's treatment subsequent to his head injury while Dr. Hasan did not.

The Office of Judges next noted that Mr. Crew was an inpatient at Charleston Area Medical Center for ten days following his compensable injury. It further noted that he has experienced a myriad of neurological and psychological symptoms following the injury. The Office of Judges concluded that the evidence shows Mr. Crew suffered a severe head injury and though he was released from a neurological stand point, he has consistently sought psychological treatment. Dr. Miller's opinion was determined to be inconsistent with Mr. Crew's treatment records and evaluations. The Office of Judges stated that he was the only physician of record to find symptom magnification or a somatoform disorder. However, the Office of Judges acknowledged that Dr. Smith found elevated somatic test scores but determined they did not rise to the level of a disorder. Lastly, the Office of Judges stated that Dr. Miller is the only physician of record to question Mr. Crew's diagnosis of post-traumatic stress disorder. The Office of Judges ultimately determined that Dr. Miller's conclusions were inconsistent with the evidence and could not be used as a basis to determine Mr. Crew's impairment.

The Office of Judges next found that Dr. Hasan's report lacked detail and was called into question by the Office of Judges in a prior Order. In that case, the Office of Judges rejected Dr. Hasan's conclusion that Mr. Crew was at maximum medical improvement and required no further treatment. In the case at bar, the Office of Judges determined that Dr. Hasan failed to mention the majority of Mr. Crew's psychiatric history. He also did not perform neuropsychological testing. Finally, the Office of Judges determined that Dr. Hasan failed to explain in detail how he arrived at his finding of 5% impairment. He reported that Mr. Crew operated with a global assessment of functioning score of fifty, which according to West Virginia Code of State Rules § 85-20-Exhibit B (2006) indicates impairment between 15% and 29%. The Office of Judges reasoned that while it was possible to have a global assessment of functioning score of fifty and still only have 5% impairment, Dr. Hasan did not provide an explanation for his findings.

The Office of Judges determined that while Dr. Smith was the only physician of record to arrive at a diagnosis of major neurocognitive disorder due to a traumatic brain injury, his diagnosis was consistent with Mr. Crew's injury and treatment history. The Office of Judges found that he worked full time, had never been fired or disciplined, and enjoyed his job prior to the injury. Following the compensable injury, Mr. Crew had difficulty returning to the tunnel in which he was injured. He attempted to return to work but was unable to perform his preinjury job. He also suffers from nightmares, tremors, depression, irritability, poor concentration, and social withdrawal. The Office of Judges stated that while there were some discrepancies regarding his full-scale IQ, the preponderance of the evidence indicates Mr. Crew suffered a life altering event. Dr. Smith's recommendations were found to be consistent with West Virginia Code of State Rules § 85-20 (2006). The Office of Judges determined that cognitive disorders from brain injury are not rated using West Virginia Code of State Rules § 85-20; therefore, Dr. Smith correctly applied the American Medical Association's *Guides* when he concluded that Mr. Crew suffered 14% impairment for cognitive dysfunction. The Office of Judges also found that Dr. Smith correctly used West Virginia Code of State Rules § 85-20 to find that he had 10% impairment for post-traumatic stress disorder. The Office of Judges concluded that even though Dr. Smith's recommendations are higher than Dr. Hasan's and Dr. Miller's, Dr. Smith's opinions are consistent with Mr. Crew's medical and psychiatric history. The Board of Review adopted

the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on April 27, 2015.

On appeal, Brayman Construction argues that Dr. Smith was the only physician of record to diagnose major neurocognitive disorder. It asserts that the other evaluating physicians diagnosed depression and/or post-traumatic stress disorder. It further argues that all of Mr. Crew's psychological treatment has been focused on depression and post-traumatic stress disorder since all physicians, except Dr. Smith, found that he had fully recovered from the closed head injury. Lastly, Brayman Construction noted that Mr. Crew's treating psychiatrist did not make diagnoses of major neurocognitive disorder or traumatic brain injury. Mr. Crew argues that Dr. Miller's findings were properly determined to be less reliable than those of Dr. Smith. He asserts that Dr. Miller was the only physician of record to find evidence of malingering or symptom magnification, and his opinion is inconsistent with the evidence of record.

After review, we agree with the reasoning of the Office of Judges and conclusions of the Board of Review. Dr. Smith found 23% impairment as a result of the compensable injury, and his opinion is supported by the evidence of record. Mr. Crew sustained a severe injury that resulted in cognitive and psychological impairment. The Office of Judges was correct to find that Dr. Smith's opinions are the most consistent with the evidentiary record, and the Board of Review was correct to affirm the Office of Judges' Order.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 24, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II